**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PEPTIDE TECH LLC, a Wyoming Limited Liability Company, | Civil Action No. 1:25-cv-13179 |
| *Plaintiff*, | |
| v. | |
| AVIDIA BANK, a Massachusetts savings bank, | |
| *Defendants*. | |

**DEFENDANT AVIDIA BANK'S MEMORANDUM OF**
**LAW IN SUPPORT OF ITS MOTION TO DISMISS COMPLAINT**

The Complaint should be dismissed in its entirety because Plaintiff challenges conduct that the parties' contract expressly authorizes and fails to plead any plausible claim for declaratory relief, breach of contract, tortious interference, violation of Chapter 93A, or violation of the Lanham Act. Plaintiff's claims arise from the termination of its card-processing relationship with Avidia Bank and its placement on Mastercard's Member Alert to Control High-Risk Merchants ("MATCH") file. But Plaintiff identifies no contractual provision that restricted Avidia's discretion to terminate processing services or to report Plaintiff to MATCH, fails to allege facts showing unfair or deceptive conduct, fails to plead source confusion or false association, and fails to specify any non-duplicative declaration it seeks. Because the parties' agreement expressly permitted the challenged actions and because Plaintiff's allegations do not plausibly establish liability under any theory advanced, dismissal is required as a matter of law.

1

## FACTUAL BACKGROUND

Avidia is a Massachusetts bank. Compl. ¶ 2.  Among other services, Avidia acts as an acquiring bank for merchants that accept debit and credit card payments issued by payment networks such as Mastercard and Discover. *Id.* ¶ 12. To perform that role, Avidia maintains agreements with card networks that impose extensive and mandatory compliance obligations on both the bank and its merchants. *Id.* ¶ 13. Those obligations require Avidia to monitor merchant activity and take action where transactions or business models present heightened risk under card-network rules. *See* Compl., Exh. A.

One such mechanism is Mastercard's Member Alert to Control High-Risk Merchants ("MATCH") database, which identifies merchants terminated for conduct that Mastercard deems high-risk. *See id.* ¶ 29. Avidia incorporates these card-network rules directly in its merchant agreements. *Id.*, Exh. A. To ensure its own compliance with payment network rules, the Merchant Processing Agreement ("MPA") reserves to Avidia the right, in its "sole discretion," to terminate processing and to report a merchant to MATCH, including conduct that Avidia believes poses unreasonable risk under card-network standards. *See id.*, Exh. A, § 3.97.

Plaintiff entered into an MPA with Avidia on July 9, 2024, to process card payments for the sale of purported "research peptides." Compl. ¶¶ 21–22. On December 5, 2024, Avidia terminated the relationship and placed Plaintiff on MATCH based on a determination that Plaintiff's activity may have violated Mastercard's merchant rules. *Id.* ¶ 30. Plaintiff now contends that this action was improper because, in its view, the sale of research peptides does not violate Mastercard's standards. *Id.*

2

That disagreement with a risk determination—made pursuant to contractual discretion—forms the sole basis for all five of Plaintiff's claims for: (1) declaratory relief, (2) breach of contract, (3) tortious interference with business relations, (4) violation of Chapter 93A, and (5) violation of the Lanham Act. *E.g.*, Compl. ¶¶ 36-66.

## STANDARD

"A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state a claim." *Ngomba v. Olee*, No. 18-11352, 2020 WL 107969, at *2 (D. Mass. Jan. 9, 2020). In ruling on the motion, a court must "treat all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 919 F.3d 121, 127 (1st Cir. 2019) (citing *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)).

However, "[i]n order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Ngomba*, 2020 WL 107969, at *2 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "[L]abels and [legal] conclusions, and a formulaic recitation of the elements of a cause of action ..." are insufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Simply put, the court should assume that well-pleaded facts are genuine and then determine whether such facts state a plausible claim for relief." *Ngomba*, 2020 WL 107969, at *2 (citing *Iqbal*, 556 U.S. at 679).

3

## **ARGUMENT**

The Court should grant Avidia's motion and dismiss Plaintiff's claims because the Complaint fails to state a claim upon which relief could be granted.

### I.    **Plaintiff Fails to State a Claim for Breach of Contract (Count II).**

A plaintiff alleging breach of contract must, as a first step, allege the existence of a duty actually imposed by the contract, and breach of that contract duty. *E.g., Hoang v. Eternal Salon, Inc.*, 91 Mass. App. Ct. 1109, 81 N.E.3d 822 (2017). Plaintiff suggests only that the MPA compels Avidia to allow the sale of peptides for "research purposes only" and to make termination decisions only with "proper justification" after an "investigation." Compl. ¶¶ 29, 31, 42. Because the MPA does not create either obligation, Plaintiff's claim alleging a breach of those phantom duties fails. Plaintiff, therefore, fails to state an actionable breach of contract claim because it has not identified the Merchant Agreement terms supposedly generating the duties it claims. *See, e.g.,* Dkt. 36,Order, *Chong v. Northeastern University*, C.A. No. 1:20-10844-RGS (D. Mass. Oct. 1, 2020) (dismissing breach of contract claim where the "plaintiffs fail to state a claim because they have not plausibly established that the parties' agreement included" the purported obligation at issue).

The omission is entirely predictable because the Merchant Agreement makes clear that Avidia and Mastercard retain the right and "sole discretion" to "terminate[]" the Agreement and to place a Merchant like Plaintiff on MATCH. *See* Compl., Exh. A. The Merchant Agreement thus expressly disclaims the non-existent and unidentified contract

4

duties Plaintiff invents, reserving to Avidia the right to terminate Plaintiff's payment processing privileges for any reason, without qualification.

"Where," as here, "the defendant's conduct is expressly authorized by the terms of the contract, there is no breach" because the duty asserted does not exist. *Talyancich v. Microsoft Corp.*, 2012 WL 12941690, at \*2 (W.D. Wash. Nov. 2, 2012); *see also* A.L. Prime Energy Cons., Inc. v. Mass. Bay Transp. Auth., 479 Mass. 419, 420 (2018) (holding contractor failed to state breach of contract claim where contract grants the defendant "sole discretion" over the allegedly breached provision); *E.g., Peter Marco, LLC v. Banc of Am. Merch. Servs., LLC,* 660 F. Supp. 3d 453, 465 (W.D.N.C. 2023) (dismissing complaint against Bank of America alleging improper MATCH placement and account termination where agreement gave BofA "sole discretion" to take such action). Put simply, Plaintiff agreed to terms that vested Avidia with sole discretion to terminate its account and place it on MATCH. Plaintiff cannot now complain that Avidia "breached" those terms by doing exactly what Plaintiff agreed Avidia could do and Avidia reserved the right to do. *See, e.g., Prime Energy,* 379 Mass. at 420. Plaintiff's contract claim must be dismissed.

## II.      Plaintiff Fails to State a Claim for Violation of Chapter 93A (Count IV).

Plaintiff's Chapter 93A claim must be dismissed because the Complaint does not allege facts plausibly suggesting that Avidia engaged in unfair or deceptive conduct. To state a Chapter 93A claim, a plaintiff must show "(1) the defendant engaged in an unfair method of competition or committed an unfair deceptive act or practice; (2) a loss of money or property was suffered; and (3) the defendant's unfair or deceptive method, act

or practice caused the loss suffered." *Anoush Cab, Inc. v. Uber Techs., Inc.*, 8 F.4th 1, 16 (1st Cir. 2021). To qualify as "unfair or deceptive" "there must be some level of bad faith and a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Monotype Imaging Inc. v. Deluxe Corp.,* 883 F. Supp. 2d 317, 323 (D. Mass. 2012) (citing *Madan v. Royal Indem. Co.,* 532 N.E.2d 1214, 1217 (1989)). It is axiomatic that a "mere breach of contract, without more, does not constitute a violation of Chapter 93A," and that even "[s]imple errors, negligent acts, and … negligent misrepresentations" fail to reach the threshold. *Id.* at 322-323.

That is exactly what Plaintiff alleges here. Plaintiff's Chapter 93A claim rests on two theories, neither of which plausibly alleges unfair or deceptive conduct. First, Plaintiff alleges that Avidia refused to "render payment processing services" for "unjustified and arbitrary reasons." Compl. ¶ 55. That allegation merely duplicates Plaintiff's breach of contract claim and cannot, without more, support Chapter 93A liability. *See* Compl. ¶ 43 ("Avidia breached the contract by refusing to continue to provide payment processing services"). Second, Plaintiff alleges that Avidia "misled" card brands into believing Plaintiff's goods were disapproved. *Id.* ¶ 56. But the Complaint pleads no facts supporting an inference that Avidia *knowingly* made false statements about Plaintiff. To the contrary, Plaintiff alleges that the industry surrounding peptide-based weight-loss medications led Avidia to apply an overbroad compliance approach to "stay in Mastercard's good graces," *id.* ¶ 31, and expressly alleges that Avidia's conduct may have been "negligent," *id.* ¶ 32. Allegations of negligent, risk-averse decision-making—without facts suggesting knowingly false statements or intent to

6

deceive—do not rise to the level of unfair or deceptive conduct under Chapter 93A. *Cf. Monotype Imaging Inc.*, 883 F. Supp. 2d at 323. Accordingly, Plaintiff's Chapter 93A claim must be dismissed.

### III. Plaintiff Fails to State a Claim for Violation of the Lanham Act (Count V).

Plaintiff's Lanham Act claim also must be dismissed because Plaintiff does not allege that consumers are likely to mistake Plaintiff's products for someone else's as a result of any conduct by Avidia. Rather, Plaintiff alleges that Avidia misdescribed the "sponsorship, approval, and legitimacy" of unspecified research peptides "in a manner likely to deceive" *payment networks* like Mastercard. Compl. ¶ 64. But, to state a plausible claim under the Lanham Act for "false association,", on the Plaintiff must assert facts demonstrating  "the possibility of *consumers* mistaking one party's good, service, or trademark *with that of another*." *Am. Bd. of Internal Med. v. Salas Rushford*, 114 F.4th 42, 64 (1st Cir. 2024) (citing *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 43 (1st Cir. 1998) (emphasis added). It therefore addresses "attempts to appropriate the goodwill associated with a competitor[]"—not to the risk that vendors "will be misled into believing that [goods or services] are substandard." *Id.* (dismissing false association claim predicated on "commercial disparagement" or statements regarding "the quality of [goods or] … services … in question").

Thus, there are two fatal defects here. First, to the extent Plaintiff alleges any confusion, it is that payment networks might be confused. The payment networks are not *consumers*, and the Lanham Act applies only to the potential for *consumer* confusion.

Second, Plaintiff does not claim that Avidia caused Mastercard to confuse Peptide's products with those attributable to some other entity. Rather, Plaintiff alleges only that Avidia conveyed information suggesting Plaintiff's products lacked regulatory approval. Compl. ¶¶ 62–64. Allegations of product illegitimacy do not state a false association claim, and Plaintiff's Lanham Act claim therefore fails as a matter of law.

## IV.    Plaintiff Fails to State a Claim for Tortious Interference with Business Relations (Count III).

Plaintiff's tortious interference claim must be dismissed because Plaintiff alleges that Avidia interfered with relationships to which Avidia itself was a party and fails to allege that any  purported interference was improper. To state a claim for tortious interference, "the plaintiff must prove that (1) he had a business relationship for economic benefit with a third party, (2) the defendants knew of the relationship, (3) the defendants interfered with the relationship through improper motive or means, and (4) the plaintiff's loss of advantage resulted directly from the defendants' conduct." *Kurker v. Hill*, 44 Mass. App. Ct. 184, 191, 689 N.E.2d 833, 838 (1998). "A party cannot tortiously interfere with a … business relationship to which he is a party." *Sensitech, Inc. v. LimeStone FZE*, 581 F. Supp. 3d 342, 348 (D. Mass. 2022) (citing *Psy-Ed Corp. v. Klein*, 459 Mass. 697, 717, 947 N.E.2d 520, 537 (2011).

Here, Plaintiff alleges only that Avidia interfered with Plaintiff's "business relationship" with payment networks like Mastercard. *See* Compl. ¶¶ 49-50. But Avidia was itself a party to that relationship. Indeed, the MPA between Plaintiff and Avidia—an entity that is "a member of [the payment networks],"—is the sole mechanism through

which Plaintiff was able to accept card payments and thereby have any relationship with the payment networks at all. *See* Compl., Exh. A at 4-5. The MPA further confirms Avidia's integral role in that relationship, assigning Avidia responsibility for enforcing payment network rules and administering the bank account through which card transactions were processed. *See id*. Because Avidia was a party to the very relationship Plaintiff claims it interfered with, Plaintiff's tortious interference claim fails as a matter of law. *Sensitech, Inc.*, 581 F. Supp. 3d at 348.

Plaintiff's claim also independently fails because Plaintiff fails to allege Avidia acted with improper motive or employed improper means. "Improper purpose" means "an intent to specifically harm the plaintiff, unrelated to any business purpose." *Id.; see also Cavicchi v. Koski*, 67 Mass. App. Ct. 654, 658 (2006) (improper motive "may include ulterior motive [e.g., wishing to do injury]," as well as "evidence of retaliation or ill will") (cleaned up). "Improper means" means "violation of a statute or common-law precept, *e.g.*, by means of threats, misrepresentation, or defamation." *Huang v. RE/MAX Leading Edge,* 101 Mass. App. Ct. 150, 164, 190 N.E.3d 518, 531 (2022), *aff'd sub nom. Huang v. Ma*, 491 Mass. 235, 201 N.E.3d 713 (2023). "[N]egligent (or even grossly negligent) conduct … is insufficient to meet the 'improper means' element; rather, the plaintiff is required to show conduct amounting to deceit or dishonesty." *Cutting Edge Homes, Inc. vs. Alan J. Mayer*, 103 Mass. App. Ct. 749, 756 (Feb. 27, 2024).

Plaintiff fails to allege either "improper motive or means." First, Plaintiff alleges only that "Avidia's goal is to stay in Mastercard's good graces," not to harm Plaintiff. *See* Compl., ¶ 31. Second, Plaintiff alleges that Avidia "presumably" placed Plaintiff on

MATCH because, during prescription weight loss medications' initial introduction into the marketplace, it broadly grouped all peptide vendors, including Plaintiff, with vendors selling such medications. *See id.* ¶¶ 31-32. Plaintiff acknowledges this grouping may have been negligent, *id.* ¶ 32, but alleges no facts to support an inference that Avidia knowingly or purposefully mischaracterized Plaintiff's business. *See supra* § II. Nor could Avidia's placement of Plaintiff on MATCH constitute improper means where that action was expressly authorized by the MPA. *See Peter Marco, LLC*, 660 F. Supp. 3d at 453. Because Plaintiff has failed to allege that Avidia acted with an "improper purpose" or by "improper means," Plaintiff's tortious interference claim must be dismissed.

### V.      Plaintiff Fails to State a Claim for Declaratory Relief (Count I).

Plaintiff's claim for declaratory relief fails for two independent reasons. First, Plaintiff does not identify the declaration it seeks. Second, the declaratory judgment claim impermissibly duplicates Plaintiff's other causes of action.

"The key question" when determining whether to grant declaratory relief is "the extent to which the desired declaration would be of practical assistance in setting the underlying controversy to rest." *See* Dkt. 71, Order at 16, *United States v. NSTAR Electric Co. et al.*, No. 16-cv-11470-RGS (D. Mass. Oct. 27, 2016) (cleaned up). For that reason, a demand for declaratory relief must "state with precision the declaratory judgment" desired.  Fed. R. Civ. P. 57, Advisory Comm. Notes, 1937 Adoption. Plaintiff does not do so here. The Complaint never specifies what, precisely, Plaintiff wants this Court to declare. *See generally* Compl. Count I, Prayer for Relief.  Absent any articulation of the declaration sought, the Court lacks the basic information required to

assess whether a declaratory judgment would provide "practical assistance in setting the underlying controversy to rest." *NSTAR Electric Co.*, Dkt. 71, Order at 16. Plaintiff's failure to plead the substance of the requested declaration is therefore fatal to its declaratory judgment claim.

Plaintiff's declaratory judgment claim also must be dismissed because it "merely duplicates" Plaintiff's other counts. *O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 467 (D. Mass. 2018), *on reconsideration,* 370 F. Supp. 3d 204 (D. Mass. 2019) (dismissing declaratory judgment claim because it was duplicative of other counts). Count I simply alleges that Plaintiff has and will continue to "suffer[] damage to reputation and lost sales" because "Avidia refuses to remove [it] from the MATCH list." Compl. ¶¶ 37-39. This exact alleged conduct separately forms the basis of Plaintiff's other claims. *E.g.*, Compl. ¶¶ 42 ("Avidia intentionally caused the breach of the Parties' MPA [Count II] by recommending … Peptide be placed on the MATCH list …"); 50 ("Avidia … intentionally interfered with [business relationships] by providing … information that led to MATCH placement."); 65 (Avidia violated the Lanham Act [Count V] by making "false statements [that] have caused confusion … and have harmed Peptide's business relationships"). As such, Plaintiff's declaratory judgment claim must be dismissed because it simply repackages the same alleged conduct and injuries asserted in other counts. *O'Hara*, 306 F. Supp. 3d at 467 (quoting *Young v. Wells Fargo Bank, N.A.,* 717 F.3d 224, 237 (1st Cir. 2013)).

11

## <u>CONCLUSION</u>

For the foregoing reasons, Avidia respectfully requests that this Court dismiss the Complaint.

Dated: January 9, 2025

Respectfully Submitted,

/s/ *Adam M. Ramos*
Adam M. Ramos (BBO# 671042)
Hinckley, Allen & Snyder LLP
100 Westminster Street, Suite 1400
Providence, RI 02903-2319
Tele: +1.401-457-5164
Email: aramos@hinckleyallen.com

Amanda J. Ford (BBO# 705356)
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109-1775
Tele: +1.617-378-4147
Email: aford@hinckleyallen.com

*Counsel for Defendant Avidia Bank*