**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| PEPTIDE TECH LLC, a Wyoming Limited Liability Company, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 25-13179-MJJ |
| AVIDIA BANK, a Massachusetts savings bank, | ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OF DECISION

May 28, 2026

JOUN, D.J.

Peptide Tech, LLC ("Plaintiff" or "Peptide Tech"), a merchant and seller of peptides, brings suit against Avidia Bank ("Defendant" or "Avidia"), a Massachusetts bank and acquiring bank for merchants who accept credit and debit card payments, and DOES 1–20 ("Doe Defendants"). *See generally* [Doc. No. 1]. Peptide Tech seeks to recover from the harm it allegedly suffered and continues to suffer after Defendants reported Peptide Tech to Mastercard, leading Mastercard to place Peptide Tech on the Member Alert to Control High-Risk Merchants ("MATCH") List. *See* [*id.*]. Peptide Tech alleges that Doe Defendants are presently unidentified persons or entities responsible in some manner for the challenged conduct and that Peptide Tech will amend the complaint once their identities are ascertained. [*Id.* at ¶ 3]. The complaint alleges five claims: declaratory relief, breach of contract, tortious interference with business relationships, violation of Mass. Gen. Laws ch. 93A, and violation of the Lanham Act. *See generally* [*id.*].

Defendant moves to dismiss all five claims. [Doc. No. 6]. For the reasons set forth below, Defendant's motion to dismiss, [Doc. No. 6], is <u>GRANTED</u>.

## I.    BACKGROUND[1]

To accept debit and credit card payments, merchants must obtain payment processing services through a payment processor and a member bank, also known as an acquirer. [Doc. No. 1 at ¶ 12]. These payment processing services are contracted with payment card brands such as Visa, Mastercard, Discover, and American Express (collectively, the "Card Brands"). [*Id.*]. The Card Brand rules govern participants in the payment processing system, including payment processors, acquirers, and merchants. [*Id.* at ¶ 13].

Plaintiff is a merchant engaged in the business of peptide research. [*Id.* at ¶ 17]. Defendant Avidia is an acquirer. [*Id.* at ¶ 18]. Plaintiff and Defendant entered into a Merchant Processing Agreement ("MPA"),[2] which allowed Plaintiff to process credit and debit card payments made by customers purchasing Plaintiff's products. [*Id.* at ¶ 19]. Soon after entering into the MPA, Plaintiff began accepting card transactions for sales of its products. [*Id.* at ¶ 20]. In the MPA, Plaintiff identified its business category as "Research Chemicals." [*Id.* at ¶ 21].

Plaintiff markets peptides as research chemicals and does not sell them for human consumption. [*Id.* at ¶¶ 22–23]. Instead, Plaintiff sells its products to research labs. [*Id.* at ¶ 23]. There is no law, governmental regulation, FDA regulation, promulgation, or rule that prevents or restricts Plaintiff from merchandising glucagon-like peptide-1 ("GLP-1") products. [*Id.* at ¶ 26].

---

[1] I accept all of the allegations in the Complaint as true and draw all reasonable inferences in favor of Plaintiff.

[2] I consider the MPA for purposes of deciding the motion to dismiss as it was attached to the Complaint as an exhibit. *See* [Doc. No. 1-1, Ex. A.].

Nothing about Plaintiff's payment processing or the products it sells changed after it entered into the MPA with Defendant. [*Id*. at ¶ 28].

Defendant knew the nature of Plaintiff's business because underwriting and banking regulations required Defendant to learn about prospective merchants, including by visiting Plaintiff's website and confirming the legitimacy of Plaintiff's business. [*Id*. at ¶ 27]. Based on this review, Defendant was aware that Plaintiff sold peptides for research purposes only. [*Id.*].

MATCH is a Mastercard-maintained database that identifies merchants terminated by acquirers due to suspected high-risk behavior, such as fraud, excessive chargebacks, or regulatory violations. [*Id.* at ¶ 29]. Placement on MATCH effectively eliminates a business's ability to accept credit card payments for its products. [*Id*.].

On December 5, 2024, Mastercard placed Plaintiff on the MATCH List, for code violation 10, "Violation of Standards." [*Id*. at ¶ 30].

Defendant recommended, supported, or otherwise caused Plaintiff to be placed on the MATCH List. [*Id.* at ¶ 32]. Defendant has refused to explain what act constituted the "Violation of Standards" or what justified the MATCH placement. [*Id*. at ¶¶ 31–33]. Defendant treated Plaintiff's sales of peptides "for research purposes" the same way they treat vendors selling peptide-based medications for human consumption, even though Plaintiff's products are sold for research purposes only and require no doctor's prescription. [*Id*. at ¶ 31]. Defendant's motivation for the MATCH placement was to remain in Mastercard's "good graces" and protect itself, regardless of whether the MATCH placement was warranted. [*Id*.]. Defendant's MATCH placement and continued refusal to explain its decision caused Plaintiff to lose millions in revenue and suffer reputational damage. [*Id*. at ¶¶ 34–35].

Based on these allegations, Plaintiff asserts five claims against Defendant and Doe Defendants. *See generally* [*id.*]. First, Plaintiff seeks declaratory relief, alleging that a real controversy exists because Defendants continue to maintain that Plaintiff should remain on the MATCH List and refuse to remove Plaintiff from the list. [*Id.* at ¶¶ 36–39].

Second, Plaintiff asserts breach of contract, alleging that Defendant entered into the MPA with Plaintiff, caused Plaintiff's MATCH placement without proper justification, refused to continue providing payment processing services, all of which resulted in harm to Plaintiff, including lost sales, lost business opportunities, and reputational damage. [*Id.* at ¶¶ 40–44].

Third, Plaintiff asserts tortious interference with business relationships, alleging that it had business relationships with Defendant and the Card Brands, and that Defendant intentionally interfered with those relationships by providing false information that led to Plaintiff's MATCH placement. [*Id.* at ¶¶ 48–52].

Fourth, Plaintiff asserts a claim under Mass. Gen. Laws ch. 93A, alleging that Defendant engaged in deceptive and misleading conduct by representing that it would provide payment processing services, then refusing to do so for unjustified or arbitrary reasons, and misleading the Card Brands into believing Plaintiff's goods were disapproved. [*Id.* at ¶¶ 53–58].

Fifth, Plaintiff asserts a Lanham Act claim under 15 U.S.C. § 1125, alleging that Defendant made false or misleading representations in commerce regarding Plaintiff's products, including by representing to the Card Brands that Plaintiff's product was not approved. [*Id.* at ¶¶ 59–66].

Plaintiff seeks damages, injunctive relief compelling Defendant to request Plaintiff's removal from the MATCH List, attorneys' fees where available, costs, and other appropriate relief. [*Id.* at 11].

4

## II.  LEGAL STANDARD

In evaluating a Rule 12(b)(6) motion to dismiss, the Court must determine "whether, construing the well-pleaded facts of the complaint in the light most favorable to the plaintiff[], the complaint states a claim for which relief can be granted." *Cortés-Ramos v. Martin-Morales*, 956 F.3d 36, 41 (1st Cir. 2020) (citation omitted). The complaint must allege "a plausible entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In conducting this review, courts "ignore[ ] statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements, then take[ ] the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see[] if they plausibly narrate a claim for relief." *Sonoiki v. Harvard Univ.*, 37 F.4th 691, 703 (1st Cir. 2022) (cleaned up).

## III.  ANALYSIS

### A.  Breach Of Contract

"To state a claim for breach of contract under Massachusetts law, the plaintiff must allege that 1) a valid, binding contract exists between the parties, 2) the defendant failed to perform its obligations under that contract and 3) such failure caused the plaintiff damage." *George P. Johnson Hong Kong Ltd. v. L.E.K. Consulting LLC*, 512 F. Supp. 3d 101, 104 (D. Mass. 2020) (citing *Shaulis v. Nordstrom, Inc.*, 120 F. Supp. 3d 40, 54 (D. Mass. 2015) (citation omitted)). The parties' dispute centers around the second element.

Defendant argues that the breach of contract claim fails because Plaintiff does not identify terms within the MPA that create the duties Plaintiff claims exist. [Doc. No. 7 at 4–5]. Instead,

5

Defendant contends that Plaintiff asserts non-existent duties; while Plaintiff claims the MPA permits termination decisions only with "proper justification" after an "investigation," [*id*. at 4], citing [Doc. No. 1 at ¶¶ 29, 31, 42], Defendants argue the MPA creates neither obligation, [Doc. No. 7 at 4]. Indeed, Defendant argues that the MPA "makes clear that Avidia and Mastercard retain the right and sole discretion to terminate the Agreement and to place a Merchant like Plaintiff on MATCH." [*Id*.]. According to Defendant, the MPA expressly gives Defendant broad discretion "to terminate Plaintiff's payment processing privileges for any reason, without qualification." [*Id*. at 4–5]. On that basis, Defendant contends that Plaintiff cannot state a breach claim by challenging conduct the MPA authorized. [*Id.*].

I agree with Defendant that Plaintiff does not sufficiently allege "obligations under the [MPA]" that Defendant failed to perform. *Hong Kong Ltd.*, 512 F. Supp. 3d at 104. Specifically, § 3.07 of the MPA gives the Defendant authority to terminate the agreement in certain circumstances, including where "[Defendant] reasonably determines that [Plaintiff] has violated any term, condition, covenant, or warranty of this Agreement, or if [Defendant] determines in <u>its sole discretion</u> that [Plaintiff] has abused its privileges under this Agreement." [Doc. No. 1-1, Ex. A at 9] (emphasis added). "Sole discretion means the power to make decisions without anyone else's advice or consent." *A.L. Prime Energy Consultant, Inc. v. Massachusetts Bay Transp. Auth.*, 479 Mass. 419, 431 (2018) (internal quotation omitted). In that case, the Supreme Judicial Court found that the "sole discretion" language "clearly permit[ted] [the Defendant] to terminate the contract unilaterally," *id*., ultimately concluding that the plaintiff had not alleged sufficient facts to state a claim for breach of contract, *id*. at 433. Here, Defendant is correct that the MPA gives it substantial discretion over termination and MATCH-related reporting. *See* [Doc. No. 1-1, Ex. A at 9].

While Plaintiff argues in their opposition brief that the "sole discretion" argument misstates Massachusetts law, [Doc. No. 8 at 4], this argument fails to persuade. Plaintiff argues that Massachusetts "implies a covenant of good faith and fair dealing," [*id.*], but Plaintiff did not plead a claim for the implied covenant of good faith and fair dealing, *see generally* [Doc. No. 1]. Even if they had, that would not change the outcome. When a defendant is given the right to take the action they took by an express provision of the contract, there can be no breach of the implied covenant. *See, e.g., Fireman v. News Am. Mktg. In-Store, Inc.*, 2009 WL 3080716 at *9 (D. Mass. Sept. 26, 2009) (citing *VTR, Inc. v. Goodyear Tire & Rubber Co.*, 303 F. Supp. 773 (S.D.N.Y. 1969)).

Accordingly, Count II is DISMISSED.

### B. <u>Tortious Interference with Business Relationships</u>

Under Massachusetts law, to state a claim for tortious interference with business relationships, Plaintiff must plausibly allege that: "(1) the plaintiff was involved in a business relationship or anticipated involvement in one, (2) the defendant knew about the relationship, (3) the defendant intentionally interfered with the relationship for an improper purpose or by an improper means and (4) the plaintiff suffered damages as a result." *Int'l Floor Crafts, Inc. v. Adams*, 477 F. Supp. 2d 336, 339 (D. Mass. 2007) (citing *Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B.*, 62 N.E.2d 241 (Mass. App. Ct. 2004)). "Improper requires something more than intentional interference." *Hamann v. Carpenter*, 2018 WL 2012689 at *2 (D. Mass. April 30, 2018) (internal quotations omitted) (citing *United Truck Leasing Corp v. Geltman*, 551 N.E.2d 20, 23 (Mass. 1990)). Indeed, improper motive generally requires more than a "defendant's motive to obtain financial benefit for itself, absent any motive to hurt the plaintiff." *Bruno Int'l Ltd. v. Vicor Corp.*, 2015 WL 5447652 at *16 (D. Mass. Sept. 16, 2015). Improper interference "has been

characterized as actual malice, *i.e.*, a spiteful, malignant purpose, unrelated to the legitimate corporate interest." *Hamann*, 2018 WL 2012689 at \*2 (internal quotations omitted) (citing *Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc.*, 864 N.E.2d 518, 541 (Mass. App. Ct. 2007)).

Defendant moves to dismiss this count because (1) Plaintiff alleges interference only with relationships to which Defendant itself was a party, not with a third party, [Doc. No. 7 at 8–9], and (2) Plaintiff fails to allege improper motive or improper means, [*id.* at 9–10]. Because I agree with Defendant on the latter point, I do not reach the former.

In the complaint, Plaintiff alleges that Defendant "intentionally interfered" with Plaintiff's relationship with the Card Brands by providing the Card Brands with "false information that led to MATCH placement." [Doc. No. 1 at ¶ 50]. Plaintiff further alleges this interference "was unfair and improper as the information regarding [Plaintiff's] goods was false." [*Id*. at ¶ 51]. According to the complaint, Mastercard placed Plaintiff on the MATCH List for committing a "Violation of Standards." [*Id*. at ¶ 30]. Plaintiff speculates in the complaint that this placement was the result of Defendant's "goal [] to stay in Mastercard's good graces," and Plaintiff alleges that the Defendant is "apathetic as to whether it has wrongly destroyed a merchant's ability to sell its product with no basis whatsoever." [*Id*. at ¶ 31]. "[Defendant] is only interested in protecting itself." [*Id*.]. These statements, however, are conclusory, and do not plausibly allege improper purpose or improper means.

Improper interference requires "actual malice," which is "unrelated to [a] legitimate corporate interest," *Hamann*, 2018 WL 2012689 at \*2, and Mastercard's placement of Plaintiff on the MATCH List for a violation of standards does not rise to this level. The MPA provides that Plaintiff "agrees that Provider may disclose to any Card Network information regarding [Plaintiff]

and [Plaintiff's] [t]ransactions." [Doc. No. 1-1, Ex. A at 10]. Further, the MPA states that Plaintiff "expressly acknowledges that a MATCH/CNMF file is maintained by. . . Mastercard. . . containing information on Merchants terminated for one of more reasons specified in [Mastercard's] operating rules and regulations," including, "but [] not limited to; fraud, counterfeit paper, unauthorized transaction, excessive chargebacks or highly suspect activity." [*Id*. at 9]. Plaintiff "expressly agrees and consents to such reporting by [Defendant] in the event of the termination of this Agreement due to one or more of such reasons." [*Id*.]. Finally, and as discussed, *supra*, Defendant retained the "sole discretion" to terminate the Agreement. [*Id*.].

The MPA granted Defendant the authority to communicate to Mastercard that it had terminated its Agreement with Plaintiff, [*id*.], and Plaintiff fails to plausibly allege malice in that process. Plaintiff's claims regarding Defendant's "apath[y]" and "goal [] to stay in Mastercard's good graces," along with "presum[ing]" what Defendant's "motivation" is, [Doc. No. 1 at ¶ 31], amount to conclusions rather than factual content that must be credited at the pleading stage, *Ashcroft*, 556 U.S. at 678.

Thus, Count III (Tortious Interference with Business Relationships) is DISMISSED.

### C. <u>Violation of Mass. Gen. Laws Ch. 93A</u>

To allege a Chapter 93A claim, Plaintiff must show: "(1) a deceptive act or practice on the part of the seller; (2) an injury or loss suffered by the consumer; and (3) a causal connection between the seller's deceptive act or practice and the consumer's injury." *Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 71 (1st Cir. 2020). Further, "Rule 9(b) requires that plaintiff '[] specifically plead the time, place, and content of [the] alleged false representation[s]' underlying the. . . Chapter 93A claims." *O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 461 (D. Mass. 2018) (quoting *Mulder v. Kohl's Dep't Stores, Inc.*, 865 F.3d 17, 22 (1st Cir. 2017)). A mere breach of

contract, without more, does not constitute a Chapter 93A violation; rather, contract-related conduct must involve more than a mistake or honest dispute and some level of bad faith must be present. *Monotype Imaging Inc. v. Deluxe Corp.*, 883 F. Supp. 2d 317, 323 (D. Mass. 2012) (citation omitted).

Plaintiff alleges that Defendant agreed to render payment processing services but then refused to do so for unjustified or arbitrary reasons, arguing these acts from Defendant were "deceptive and misleading." [Doc. No. 1 at ¶ 55]. Plaintiff also alleges that Defendant "misled the Card Brands into believing [Plaintiff's] goods were disapproved when [they] were and are approved." [*Id*. at ¶ 56]. In response, Defendant argues that any attempt to classify Defendant's termination decision as unjustified or arbitrary repackages Plaintiff's breach of contract argument, and the remainder of the argument "pleads no facts supporting an inference that [Defendant] knowingly made false statements about Plaintiff." [Doc. No. 7 at 6]. I agree with Defendant.

First, the MPA makes clear that Defendant, in its "sole discretion," can terminate the Agreement with Plaintiff, [Doc. No. 1-1, Ex. A at 10], which makes any termination decision materially different from a "deceptive act" within the meaning of Ch. 93A. Further, Plaintiff does not plead facts supporting the assertion that Defendant misled the Card Brands. [Doc. No. 1 at ¶ 56]. While Plaintiff argues that Defendant incorrectly communicated to the Card Brands that its products were unapproved, [Doc. No. 1 at ¶ 56], this is speculation. Plaintiff does not point to the time or place of this allegedly false representation, as required by Rule 9(b), *see generally* [Doc. No. 1], and it ignores Plaintiff's earlier statement that Mastercard did not disclose why it found Plaintiff in violation of its governing standards, [*id*. at ¶ 31].

For these reasons, Count IV is DISMISSED.

D. **Violation of Lanham Act (15 U.S.C. § 1125)**

Defendant moves to dismiss Count V on the ground that Plaintiff has not plausibly alleged a Lanham Act claim. [Doc. No. 7 at 7–8]. The Lanham Act, 15 U.S.C. § 1125(a), creates "two distinct bases of liability": false association under § 1125(a)(1)(A) and false advertising under § 1125(a)(1)(B). *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014). Liability attaches where a person "uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact" that "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person." 15 U.S.C. § 1125(a)(1)(A). By contrast, § 1125(a)(1)(B) addresses false or misleading representations of fact in commercial advertising or promotion concerning the nature, characteristics, qualities, or geographic origin of goods, services, or commercial activities. 15 U.S.C. § 1125(a)(1)(B).

Count V appears to invoke both theories. Plaintiff alleges confusion as to "origin, sponsorship, or approval," which reflects § 1125(a)(1)(A)'s false-association language. [Doc. No. 1 at ¶ 64]. The complaint also alleges false and misleading representations of fact regarding Plaintiff's product and its approval status, which reflects § 1125(a)(1)(B)'s false-advertising language. [*Id.* at ¶¶ 61–63]. I therefore discuss each theory separately, though both are unavailing.

In Massachusetts, a false designation of origin claim generally requires allegations that the plaintiff owns a distinctive mark entitled to trademark protection, the use of that name in interstate commerce, and "its use by another in a manner likely to cause confusion as to the origin of the source of the goods or services." *Umuoji Improvement Union (N. Am.), Inc. v. Umuoji*

11

*Improvement Union (N. Am.), Inc.*, 537 F. Supp. 3d 79, 85 (D. Mass. 2021). A "likelihood of consumer confusion under this subsection mostly relate to the possibility of consumers mistaking one party's good, service, or trademark with that of another." *Am. Bd. of Internal Med. v. Salas Rushford*, 114 F.4th 42, 64 (1st Cir. 2024) (citation omitted).

Plaintiff does not plausibly allege that type of confusion. Plaintiff alleges that Defendant falsely represented to the Card Brands that Plaintiff's product was not approved, thereby misrepresenting the "sponsorship, approval, and legitimacy" of Plaintiff's business. [Doc. No. 1 at ¶ 62]. Plaintiff further alleges that Defendant's statements were likely to deceive the Card Brands and others in the industry as to the "origin, sponsorship, or approval" of Plaintiff's product. [*Id*. at ¶ 64]. But Plaintiff does not allege that it owns a distinctive mark or name entitled to trademark protection or that Defendant's use of the mark was likely to cause confusion.

Plaintiff first argues that Defendant reads § 1125(a)(1)(A) too narrowly because the statute is not limited to trademark substitution. [Doc. No. 8 at 6]. Plaintiff is correct that § 1125(a)(1)(A) also covers confusion as to "the affiliation, connection, or association" of goods, as well as "sponsorship" or "approval." 15 U.S.C. § 1125(a)(1)(A). However, Plaintiff does not allege facts indicating "the possibility of consumers mistaking [Plaintiff's] good, service, or trademark with that of another." *Salas Rushford*, 114 F.4th at 64; *see generally* [Doc. No. 1].

Plaintiff also argues that confusion as to authorization, approval, or legitimacy is sufficient. [Doc. No. 8 at 6–7]. But § 1125(a)(1)(A) concerns marketplace confusion about whether goods are affiliated with or approved by another person. *See* 15 U.S.C. § 1125(a)(1)(A); *Salas Rushford*, 114 F.4th at 64. The First Circuit rejected a false-association theory because the plaintiff's theory did "not remotely relate to any risk" that consumers would misunderstand the "origin" of his services or "misapprehend[] his affiliation" with another entity. *Salas Rushford*, 114 F.4th at 64.

The same problem exists in this case. Plaintiff alleges that Defendant falsely suggested Plaintiff's products were unapproved or illegitimate, [Doc. No. 1 at ¶¶ 61–63], but it does not allege confusion about the origin of Plaintiff's products, affiliation with another entity, or sponsorship or approval by another person in the Lanham Act sense.

Plaintiff finally argues that Defendant's alleged statements were objective misrepresentations, not mere commercial disparagement. [Doc. No. 8 at 7]. But a false statement about regulatory approval or product legitimacy does not state a false association claim unless it plausibly causes confusion as to source, affiliation, sponsorship, or approval in the Lanham Act sense. Count V therefore does not state a claim under § 1125(a)(1)(A).

To state a false-advertising claim under § 1125(a)(1)(B), a plaintiff must demonstrate that "(1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products." *Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 310–11 (1st Cir. 2002).

Plaintiff alleges that Defendant falsely represented to the Card Brands that Plaintiff's product was not approved. [Doc. No. 1 at ¶ 62]. Plaintiff does not allege commercial advertising or promotion in the complaint. *See generally* [Doc. No. 1]. Thus, even if the alleged statements were false, Count V does not plausibly plead a false-advertising claim under § 1125(a)(1)(B).

Accordingly, Count V is DISMISSED.

### E. **Declaratory Judgment**

Defendant moves to dismiss Count I (Declaratory Judgment) on two grounds. [Doc. No. 7 at 10–11]. First, Defendant argues that Plaintiff does not identify the specific declaration it seeks. [*Id*.]. Second, Defendant argues that Count I merely duplicates Plaintiff's other causes of action. [*Id*. at 11].

The Declaratory Judgment Act provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration" where "a case of actual controversy" exists. 28 U.S.C. § 2201(a). The Act "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants," thereby giving district courts the discretion to grant or deny declaratory relief. *SPARTA Ins. Co. v. Pennsylvania Gen. Ins. Co.*, 621 F. Supp. 3d 169, 179 (D. Mass. 2022) (citation omitted).

Requests for declaratory judgment must plead sufficient facts showing the existence of rights to be clarified by declaratory judgment. *Penney vs. Deutsche Bank Nat'l Tr. Co.*, No. 16-cv-10482, 2017 WL 1015002, at * 9 (D. Mass. Mar. 15, 2017) (citation omitted). In this case, Plaintiff does not expressly identify the legal rights or obligations for the Court to declare. Plaintiff's opposition clarifies that it seeks a declaration that Defendant's continued placement or maintenance of Plaintiff on MATCH was improper, unlawful, and unsupported by the MPA or Card Brand Rules. [Doc. No. 8 at 9]. This argument is both substantively incorrect, as discussed *supra*, and does not appear in the complaint itself. As such, Count I is DISMISSED.

## IV. CONCLUSION

For these reasons, Defendant's motion to dismiss, [Doc. No. 6], is <u>GRANTED</u>.

SO ORDERED.

/s/ Myong J. Joun
United States District Judge